# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**WILLIAM SMITH,**

                Plaintiff,

      -vs-                                                                     Case No. 07-C-83

**MATTHEW J. FRANK, RICK RAEMISCH,
LARRY L. JENKINS, MICHAEL DITTMANN,
JAMES OLSON, TIMOTHY IMMEL,
DAVID TARR, SCOTT B. GALLIGAN,
ANTHONY O'BRIEN, CHAD ENGEBREGSTEN,
JAN GUSE, MARY BLOCZYNSKI, PAT KONEN,
SANDRA HAUTAMAKI, and HAYLEY HERMANN-PUCKER,**

                Defendants.

---

# DECISION AND ORDER

---

The plaintiff, who is incarcerated at the Oakhill Correctional Institution, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. He is proceeding on retaliation, equal protection, and First Amendment claims, as well as claims under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc, *et seq.*, and Wisconsin state law. The plaintiff claims that the defendants unlawfully confiscated his Native American medicine herbs and eagle feather, and that they subsequently retaliated against him for complaining about the confiscation. The defendants move for summary judgment. For the reasons that follow, this motion is granted.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *McNeal v. Macht*, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those facts that, under the applicable substantive law, "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The burden of showing the needlessness of trial – (1) the absence of a genuine issue of material; and (2) an entitlement to judgment as a matter of law – is upon the movant. However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Id.* at 267; *see also Celotex Corp.*, 477 U.S. at 324 ("proper" summary judgment motion may be "opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves . . ."); Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleadings; rather its response must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial"). "Rule 56(c) mandates

2

the entry of summary judgment, . . . upon motion, against a party who fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

**FACTS**

The plaintiff was incarcerated at the Kettle Moraine Correctional Institution (KMCI) at all times relevant. The defendants are former Wisconsin Department of Corrections (DOC) Secretary Matthew J. Frank; current DOC Secretary Rick Raemisch; KMCI Warden Larry L. Jenkins; KMCI Deputy Warden Michael Dittmann; KMCI Supervising Officer 1 James E. Olson; KMCI Correctional Sergeant Timothy A. Immel; Taycheedah Correctional Institution Security Director David R. Tarr; KMCI Supervising Officers 2 Scott B. Galligan, Anthony S. O'Brien, and Chad Engebregtsen; KMCI Social Workers Janet V. Guse and Mary Bloczynski; KMCI Correctional Officer Patrick M. Konen; Waupun Correctional Institution Corrections Program Supervisor Sandra Hautamaki; and KMCI Inmate Complaint Examiner Hayley S. Pucker.

On July 10, 2005, defendant Immel conducted a random search of the plaintiff's cell. He found a feather and Native American medicine herbs stored in a "Four Aces" bag, which included tobacco. Immel confiscated both items. At the time, he did not know that the feather was an eagle feather, or if it was an approved religious property item. Immel confiscated the eagle feather because he did not know if the plaintiff was allowed to have it. Later on the same day, defendants Olson and Dittmann were conducting rounds at

3

KMCI. When they arrived at Unit 7, they spoke to Immel who turned over the confiscated materials to them. Immel wrote Conduct Report 1748138 concerning other items that were confiscated during his July 10, 2005, search of the plaintiff's cell. This conduct report alleged that the plaintiff violated rules 303.34 (theft), 303.35 (damage or alteration of property), 303.40 (unauthorized transfer of property) and 303.47 (possession of contraband). The eagle feather and herbs were not a part of this conduct report because they had been taken by Dittmann and Olson for investigation. Dittmann asked the plaintiff if he could provide tribal documentation that the feather was approved to be in his possession. The plaintiff responded that he could not. Dittmann then agreed that security staff should retain the feather until it could be determined if the plaintiff could legally possess it as religious property and that the tobacco/sage mix should be confiscated. He asked Olson to conduct an investigation regarding the feather and the herbs.

On July 11, 2005, the plaintiff filed an Offender Complaint KMCI-2005-21319 in which he complained that his eagle feather and Native American medicine herbs were wrongfully confiscated. On the same day, defendant Pucker conducted an investigation with regard to the offender complaint and contacted defendant Dittmann who informed her that he confiscated the herbs because they were not stored in their original container(s), and that they were checking into whether the plaintiff could legally possess the feather. Dittmann also informed Pucker that upon completion of the investigation, the plaintiff would either be issued a conduct report or the items would be returned to him. On July 11, 2005, Pucker

4

recommended that Offender Complaint KMCI-2005-21319 be dismissed, based on her contact with Dittmann and because pursuant to Wis. Admin. Code § DOC 303.10, staff may confiscate property from an inmate if they believe it to be contraband, and at that point, the herbs and the feather were believed to be contraband.

On July 12, 2005, defendant Olson authorized the plaintiff's placement into temporary lockup (TLU) status because it was thought that if the plaintiff remained in general population he could be disruptive to the operation of the institution due to the nature of the contraband. When he was placed in TLU, the plaintiff stated that he was not aware of the contents of the Native American medicine herbs because they were given to him in that form by the chaplain at his previous institution, and the chaplain at KMCI also approved it. Dittmann reviewed Olson's placement of the plaintiff into TLU status, and determined this placement to be accurate pursuant to Wisconsin Administrative Rule § DOC 303.11(4). Dittmann authorized the placement in TLU because the plaintiff could be disruptive to the operation of the institution if he remained in the general population. According to both Dittmann and Olson, tobacco is a sought-after item that could create wide-spread disturbances among the inmates if not treated as a serious matter.

Inmates assigned to TLU are transferred to the segregation unit. Inmates placed in TLU are allowed to have their religious property, as long as the property does not create security concerns or violate property rules. The plaintiff was able to request his medicine bag and any allowed religious books or publications related to his Native American

5

religious preference while in TLU. Inmates who are subject to TLU status typically remain in that status until the conduct report is disposed of.

On July 24, 2005, Olson wrote Conduct Report 173547 based on his belief that the plaintiff had contraband in his possession in the form of tobacco and an unauthorized eagle feather. The plaintiff was unable to provide tribal documentation regarding the possession of the eagle feather prior to July 24, 2005. Olson was not aware of the plaintiff's offender complaint KMCI-2005-21319 prior to his writing Conduct Report 1737547. Dittmann, who was not on duty at KMCI on July 24, 2005, had no involvement in the issuance or disposition of Conduct Report 1737547. Rather, defendant Tarr was the acting security director and signed the conduct report.

On August 4, 2005, Conduct Report 1737547 was disposed of by the hearing officer, defendant Galligan, who found the plaintiff guilty of the possession of contraband (tobacco). Galligan did not find the plaintiff guilty of any offenses concerning the eagle feather, and he ordered that the feather be returned to the plaintiff. The plaintiff was released from TLU status on August 4, 2005. On the same day, the plaintiff signed a KMCI Contraband Waiver form requesting KMCI to destroy the medicine herbs confiscated from his cell on July 10, 2005, and agreeing not to file an appeal concerning the herbs. The plaintiff was made aware that he could obtain appropriate replacement Native American medicine herbs in appropriate containers from the KMCI chaplain.

6

On or about August 4, 2005, defendant Officer Konen was working in the property room when he received a contraband bag that was stapled shut, with a "KMCI Contraband Waiver" form stapled to the top of the bag. Contraband bags are typically stapled shut to secure the items in the bag. It was Konen's experience from working with inmate property and contraband, that items placed in a contraband bag were intended to be destroyed, and if an item was deemed not to be contraband, then the item would be placed in a separate bag or simply returned to the inmate. The waiver form, which was signed by the plaintiff and defendant Galligan on August 4, 2005, indicated that the contraband in the bag included sage, sweet grass, cedar, and tobacco and that the plaintiff requested the contraband inside the bag be destroyed. It made no mention of an eagle feather.

On August 5, 2005, defendant Konen reviewed the waiver form, placed the sealed contraband bag in the trash container, and marked the waiver form with his initials as having destroyed the contraband bag and contents. At this time, Konen was completely unaware that a feather was contained in the contraband bag. At some point in time after destroying the contraband bag, Konen was advised that there was another form stapled to the contraband bag underneath the waiver form directing that the feather be returned to the plaintiff. Konen destroyed the feather contained in the contraband bag through an inadvertent error. It was not his intention to punish or retaliate against the plaintiff by destroying a feather that he now knows was significant to the plaintiff.

7

The purpose of the "Property Receipt/Disposition, form DOC-237, is to show the property that was received into the institution for a specific inmate; it does not necessarily mean that the property listed on the form is approved property. The form DOC-237 shows that on May 19, 2005, the plaintiff received in the mail three property items, which included one eagle feather, one medicine bag, and one mixture of cedar, sage, and tobacco.

The plaintiff was issued two conduct reports related to the July 10, 2005 cell search and confiscation of property – Conduct Reports 1748138 and 1737547. On July 31, 2005, the plaintiff appealed the decision related to Conduct Report 1748138. On August 3, 2005, the Warden ordered that the disposition was appropriate but that the conduct report be returned for correction of the record. On August 7, 2005, the plaintiff appealed the decision related to Conduct Report 1737547, concerning the medicine herbs and the eagle feather. On August 9, 2005, the warden ordered the disposition be modified because he felt this disposition was appropriate for the circumstances. The plaintiff filed Offender Complaint KMCI-2005-27398 related to Conduct Reports 1737547 and 1748138 in which he alleged that two separate conduct reports were written for the same incident in violation of the Wisconsin Administrative Code. On December 5, 2005, Sandra Hautamaki recommended affirming KMCI-2005-27398, and on December 21, 2005, Secretary Raemisch affirmed the conduct report. On February 2, 2006, a re-hearing was conducted related to Conduct Report 1737547. The hearing officer combined the re-hearing to address Conduct Reports 1737547 and 1748138. The inmate was found guilty of all charges except 303.34 (theft). The plaintiff

8

appealed and the warden sent it back for another re-hearing. On March 3, 2006, another re-hearing was conducted wherein Conduct Reports 1737547 and 1748138 were both dismissed because the contraband identified in both reports had already been destroyed, thus, the hearing officer had nothing to review.

## DOC Policy

KMCI inmates are allowed to obtain and possess personal property subject to rules and policies related to acquisition, possession and use of the personal property within the institution. All inmate personal property must be inventoried, monitored and controlled to prevent misuse, over-crowding and security breaches. Inmates are allowed to possess religious items as personal property. Religious property items, which become part of an inmate's personal property, are subject to normal considerations of safety and security. Searches of religious property are conducted with sensitivity and respect. Misuse of any personal property item may result in confiscation. Inmates are permitted to possess only approved religious property associated with their designated religious preference, unless the item presents a threat to the order and safety of the institution. All inmates, including the plaintiff, are subject to the policies related to KMCI security practices and the possession of religious property.

To maintain a safe and secure environment for staff and inmates, searches of inmate living areas are required to ensure contraband is not present. Random cell searches are necessary to ensure that inmates do not possess contraband, including anything that could

9

be fashioned into a weapon to be used for self-harm, or injury to staff or other inmates. There are always health and safety concerns associated with contraband because inmates trade items, misuse items, and steal items. Any staff member who believes that an item in the possession of an inmate is contraband may seize the item. If the property item is later determined not to be contraband, then it may be returned to the inmate.

Native American is a recognized religion within the DOC. Approved inmate religious property items are listed on the DOC 309 IMP 6A. Under that provision, an eagle feather is an approved religious property item for Native American adherents and Medicine Herbs, which include sweetgrass, sage, and cedar and a medicine bag are approved religious property items. Tobacco is not an approved religious property item for any inmate to have in his cell at KMCI. KMCI is a smoke-free institution for all inmates. Inmates found in possession of smoking materials or smoking paraphernalia will be issued a conduct report for possession of contraband.

Native American inmates at KMCI are allowed to personally possess religious books and publications, a medicine bag, 1 braid of sweetgrass, ¼ cup of sage, ¼ cup of cedar, and an authorized feather. During congregate services (sweat lodge and/or pipe and drum ceremonies), they may also utilize a ceremonial pipe and bag, ceremonial drums, an abalone shell, sage, sweetgrass, cedar, and a feather. After the plaintiff's feather was inadvertently destroyed, Pucker arranged for a Native American spiritual leader to come speak with the plaintiff and present him with another feather for smudging and prayer purposes. The

10

plaintiff, however, declined this offer because a new feather would not have the same significance.

Defendant Immel confiscated the herb bag because no KMCI inmate may have possession of smoking materials and because the Four Aces bag was not the original bag issued for the Native American Medicine Herbs. In July 2005, Immel was familiar with the approved religious property items, which were set forth in DOC 309 IMP 6A. He was aware that an eagle feather was included as an approved religious property item for inmates who choose to practice Native American. When Immel confiscated the feather from the plaintiff's cell on July 10, 2005, he was seeking clarification from his supervising officers as to whether the plaintiff was allowed to have this particular religious property item.

Although an eagle feather was an approved religious property item for inmates who have stated their religious preference to be Native American, it was defendants Olson and Dittmann's understanding that the inmate must prove that he was Native American (enrolled member of Native American tribe) and that he could legally possess the eagle feather. When Olson became aware of what he believed to be contraband in the form of an unauthorized eagle feather and a tobacco-mixture, he was obligated under department rules to issue a conduct report. Olson felt that this rule violation was significant enough to warrant a conduct report because the possession of smoking materials is a serious offense due to the possibility of using the tobacco to promote jealousy and incite violence within the institution. All inmates are subject to the same contraband rules set forth by DOC rules and KMCI

11

policies, and Olson would have issued a conduct report to any inmate who he found to be in the possession of any such contraband.

Defendant Dittmann avers that he did not place or maintain the plaintiff in TLU status pending disposition of Conduct Report 1737547 because of the plaintiff's filing of an offender complaint. All inmates, including the plaintiff, are subject to the same rules and policies related to TLU status.

**ANALYSIS**

**I.      Retaliation Claim**

The defendants contend that they are entitled to summary judgment on the plaintiff's retaliation claim because there is no evidence that the plaintiff's filing of an inmate grievance was a motivating factor behind his disciplinary proceedings or the negligent destruction of his eagle feather. The plaintiff argues that there is a "clear pattern of conduct" supporting his allegation that the defendants retaliated against him for filing a complaint. (Pl.'s Br. at 7.)

Otherwise lawful action "taken in retaliation for the exercise of constitutionally protected right violates the Constitution." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). To prevail on a retaliation claim, a prisoner must prove that his constitutionally protected conduct was a substantial or motivating factor in a defendant's actions. *See Hasan v. U. S. Dep't of Labor*, 400 F.3d 1001, 1005-06 (7th Cir. 2005); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Spiegla v. Hull*, 371 F.3d 928, 941-42 (7th

12

Cir. 2004). "A motivating factor is a factor that weighs in the defendant's decision to take the action complained of – in other words, it is a consideration present to his mind that favors, that pushes him toward, the action." *Hasan*, 400 F.3d at 1006. "Once the plaintiff proves that an improper purpose was a motivating factor, the burden shifts to the defendant . . . to prove by a preponderance of the evidence that the same actions would have occurred in the absence of the protected conduct." *Spiegla*, 371 F.3d at 943.

The plaintiff claims that his July 12, 2005, placement in TLU was in retaliation for filing Offender Complaint KMCI-2005-21319 the previous day. The plaintiff may establish improper motive by pointing to evidence suggesting a retaliatory motive, such as suspicious timing or statements by the defendant suggesting that he was bothered by the protected conduct. *See Mullin v. Gettinger*, 450 F.3d 280, 285 (7th Cir. 2006); *Culver v. Gorman & Co.*, 416 F.3d 540, 545-50 (7th Cir. 2005). However, "[s]peculation based on suspicious timing alone . . . does not support a reasonable inference of retaliation; instead, plaintiffs must produce facts which somehow tie the adverse decision to the plaintiffs' protected actions." *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000). Plaintiff offers nothing but speculation to bolster his suspicious timing argument. Therefore, Smith's retaliation claim cannot defeat summary judgment.

**II.     RLUIPA and First Amendment Claims**

The plaintiff contends that the defendants violated his rights under RLUIPA and the First Amendment because his religion was substantially burdened by the confiscation

13

and eventual destruction of his eagle feather. RLUIPA prohibits prisons receiving federal funds[1] from imposing a substantial burden on an inmate's religious exercise unless prison officials can demonstrate that "imposition of the burden on that person is (1) in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Koger v. Bryan*, 523 F.3d 789, 796 (7th Cir. 2008) (citing 42 U.S.C. § 2000cc-1(a)(1)-(2)). To state a prima facie case for violation of RLUIPA, plaintiff bears the initial burden of demonstrating that the defendants placed a substantial burden on the exercise of his religious beliefs. *See* 42 U.S.C. § 2000cc-2(b); *Hernandez v. Commissioner of Internal Revenue*, 490 U.S. 680, 699 (1989). A substantial burden is "one that necessarily bears a direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable." *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003). Stated another way, a substantial burden may be understood as one that puts "substantial pressure on an adherent to modify his behavior and violate his beliefs." *Koger*, 523 F.3d at 799.

KMCI provides Native American inmates with access to congregate services and ceremonies, possess religious books, publications, a medicine bag, 1 braid of sweetgrass, 1/4 cup of sage, 1/4 cup of cedar, and an authorized feather. During congregate services (sweat lodge and/or pipe and drum ceremonies), they may also utilize a ceremonial pipe and bag, ceremonial drums, an abalone shell, sage, sweetgrass, cedar, and a feather. After Smith

---

[1] It is undisputed that DOC receives and uses federal funds in its state prison facilities.

14

agreed to send out his medicine herb mixture, he could have obtained replacement medicine herbs in appropriate containers from the KMCI Chaplain. Even while he was in temporary lockup, Smith was able to request his medicine bag, religious books and/or publications. After Smith's feather was destroyed inadvertently, ICE Pucker arranged for a Native American spiritual leader to come speak with Smith and present Smith with another feather for smudging and prayer purposes.

Given these undisputed facts, Smith cannot meet his prima facie burden of demonstrating that the exercise of his religion was rendered "effectively impracticable." Smith always had other available avenues to practice his religious beliefs, and he even had access to a different feather after his personal feather was confiscated and destroyed. *See, e.g., Kaufman v. McCaughtry*, 419 F.3d 678, 683 (7th Cir. 2005) (no substantial burden where plaintiff "offered nothing to suggest that . . . alternatives are inadequate");[2] *Sanders v. Ryan*, 484 F. Supp. 2d 1028, 1035 (D. Ariz. 2007) (vacated and remanded on other grounds, *Sanders v. Ennis-Bullock*, 2009 WL 535826 (9th Cir.)) (denial of access to new audiotapes of church services did not substantially burden plaintiff's religious exercise where plaintiff could listen to old audiotapes and practice his religion by other means).[3] Smith's

---

[2] *Kaufman* involved a First Amendment claim, not a claim under RLUIPA, but "RLUIPA's legislative history indicates that it is to be interpreted by reference to [the Religious Freedom Restoration Act] and First Amendment jurisprudence." *Civil Liberties for Urban Believers*, 342 F.3d at 761.

[3] *See also Weir v. Nix*, 114 F.3d 817, 820-22 (8th Cir. 1997) (considering alternatives in determining whether burden was substantial); *Bryant v. Gomez*, 46 F.3d 948, 949-50 (9th Cir. 1995) (no "substantial burden" where alternatives were available) (different provision of RFRA superseded by RLUIPA as stated in *Navajo Nation v. U.S. Forest Service*, 479 F.3d 1024, 1033 (9th Cir. 2007)).

15

subjective claim that his eagle feather had special significance to his personal religious practices is not enough to state a claim under RLUIPA. *See, e.g., Borzych v. Frank*, 439 F.3d 388, 390 (7th Cir. 2006) (plaintiff's "unreasoned say-so" insufficient to create a material dispute of fact for trial).

Moreover, although "RLUIPA itself contains no state-of-mind standard, a fault requirement consistent with Congress's purpose must be incorporated from customary tort principles." *Lovelace v. Lee*, 472 F.3d 174, 194 (4th Cir. 2006). Because Smith's feather was inadvertently destroyed, Smith cannot demonstrate that the defendants deliberately burdened his ability to practice his religion. *See id.* ("[a]doption of the negligence standard would open prison officials to unprecedented liability for burdening an inmate's religious exercise."); *see also Treece v. Burnett*, No. 4: 06-CV-110, 2007 WL 2815020 at *10 (W.D. Mich.) (no liability under RLUIPA because "[a]t *most*, [defendant] acted negligently by failing to investigate the matter and uncover the error" with respect to plaintiff's eligibility for kosher meals).

Even if Smith could meet his *prima facie* burden, confiscation of his eagle feather and herb mixture pending further investigation was the least restrictive means of advancing the prison's interest in safety, security and management. RLUIPA does not "elevate accommodation of religious observances over an institution's need to maintain order and safety. Our decisions indicate that an accommodation must be measured so that it does not override other significant interests." *Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005).

16

It is undisputed that Sgt. Immel suspected that the herb mixture contained tobacco, which is contraband under prison regulations. As for the eagle feather, Smith brought the feather with him to KMCI upon his transfer there on May 12, 2005. On July 10, 2005, Smith explained to defendants Immel, Dittman, and Olson about the significance of his eagle and showed them his DOC property slip for the feather. Upon further questioning, the plaintiff responded that he did not have a permit for the feather but that he did not need one because he was a member of a federally recognized Indian tribe. Native Americans are allowed eagle feathers under the DOC's Internal Management Procedures. A Native American religious eagle feather does not constitute "contraband" under the Wisconsin Administrative Code or the DOC's Internal Management Procedures. However, the possession of eagle feathers is regulated by federal law, and it is a federal crime to possess an eagle feather without a permit. *See United States v. Smith*, 29 F.3d 270, 272 (7th Cir. 1994). The feather was discovered as the result of a random search, it was confiscated to assure compliance with federal law, and the feather was supposed to be returned to Smith. There was no less restrictive means to assure compliance with federal law than to temporarily confiscate the suspected illegal item.

The protections offered by the First Amendment are more limited than those extended under RLUIPA. Therefore, Smith's First Amendment claim also must be dismissed as a matter of law. *See Mark v. Gustafson*, 482 F. Supp. 2d 1084, 1090 (W.D. Wis. 2006)

17

("any claim that fails under RLUIPA will inevitably fail under the First Amendment's more stringent requirements").

### III. Equal Protection Claims

Plaintiff's equal protection claim is duplicative to his RLUIPA and First Amendment claims because they all involve the same set of facts. *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (dismissing equal protection and Eighth Amendment claims based on same circumstances as free exercise claim because free exercise claim "gains nothing by attracting additional constitutional labels"). The court must analyze the plaintiff's allegations under the most "explicit source[s] of constitutional protection," *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Conyers*, 416 F.3d at 586, and in this case, the salient claims are RLUIPA and freedom of religion. Accordingly, the defendants' motion for summary judgment as to the plaintiff's equal protection claim will be granted.

### IV. State Law Claims

The general rule is that when all of the federal claims are dismissed before trial, the district court should decline to exercise supplemental jurisdiction over any pendent state law claims. *See Carr v. CIGNA Securities, Inc.*, 95 F.3d 544, 546 (7th Cir. 1996). The Court sees no reason to depart from this well-established practice.

18

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

1. Defendants' motion for summary judgment [D. 46] is **GRANTED**; and

2. This matter is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 20th day of March, 2009.

**SO ORDERED,**

*s/ Rudolph T. Randa*

**HON. RUDOLPH T. RANDA**
**Chief Judge**